UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 29, 2020

SEAN F. McAVOY, CLERK

TALIA D., on behalf of R.V.E., a minor child,

    Plaintiff,

v.

ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 1:19-CV-3245-JTR

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 14, 15. Attorney D. James Tree represents Talia D., who appears on behalf of her minor son, R.V.E. (Plaintiff); Special Assistant United States Attorney Alexis Toma represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

On August 17, 2016, Talia D. filed an application for Supplemental Security Income (SSI) benefits, on behalf of Plaintiff, alleging Plaintiff had been disabled since June 7, 2011, due to anomalous origin of the right coronary artery with interarterial course. Tr. 154, 156, 184. Plaintiff's application was denied initially and upon reconsideration.

On June 20, 2018, an administrative hearing was held before Administrative Law Judge (ALJ) Marie Palachuk, at which time testimony was taken from

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

Plaintiff, Plaintiff's mother (Talia D.) and medical expert Jerry Seligman, M.D. Tr. 38-56. On September 24, 2018, the ALJ issued a decision finding Plaintiff was not disabled. Tr. 15-29. The Appeals Council denied review on August 15, 2019. Tr. 1-5. The ALJ's September 2018 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on October 14, 2019. ECF No. 1.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on November 17, 2001, and was 14 years old on the date of the disability application, August 17, 2016. Tr. 154, 156. At the administrative hearing, Plaintiff's mother, Talia D., testified Plaintiff had surgery in July 2016 to repair the right coronary artery of his heart. Tr. 47. She stated that prior to surgery Plaintiff had shortness of breath, fainting spells, dizziness, chest pain, coughing, spotty vision and headaches and Plaintiff continued to have headaches and fatigue following surgery. Tr. 48. She reported Plaintiff did not perform very well in school during the year following the surgery, Plaintiff's ninth-grade year. Tr. 48.

Plaintiff testified at the administrative hearing that he first experienced chest pain when he was eight years old and was subsequently diagnosed with a heart murmur. Tr. 50. He fainted for the first time in 2015 and twice in early 2016. Tr. 50. He began to experience chest pain while participating in track in May 2016 which resulted in the discovery of the need for heart surgery. Tr. 50-51. Prior to the July 2016 surgery, he also had shortness of breath, fatigue and headaches. Tr. 51. He indicated that following surgery his headaches became worse and he was extremely tired. Tr. 51-52. Plaintiff stated he would fall asleep in his classes and his tiredness, combined with stress and headaches, caused low grades in his ninth-

ORDER GRANTING DEFENDANT'S MOTION . . . - 2

grade year (a 1.3 grade point average). Tr. 52-53. During his ninth-grade year, Plaintiff had a doctor-imposed restriction to not participate in physical education classes and a physical accommodation to have the school bus drop him off at the top of a hill instead of the usual spot at the bottom of a hill. Tr. 53-54. At the time of the June 2018 administrative hearing, Plaintiff had just completed his tenth-grade year and reported a 2.5 grade point average. Tr. 54. He testified he continued to have headaches and was tired all the time. Tr. 54.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act provides that a child under 18 is "disabled" for purposes of SSI eligibility if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  The Commissioner follows a three-step sequential process in determining childhood disability:  (1) whether the child is engaged in substantial gainful activity; (2) if not, whether the child has a medically determinable severe impairment; (3) and, if so, whether the child's severe impairment meets, medically equals, or functionally equals the severity of a set of criteria for an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 416.924.

If the Commissioner determines at step three that the claimant has an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, the analysis ends there.  If not, the Commissioner decides whether the child's impairment results in limitations that functionally equal a listing.  20 C.F.R. § 416.926a(a).  In determining whether an impairment or combination of impairments functionally equal a listing, the Commissioner assesses the claimant's functioning in terms of six domains:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).

When evaluating the ability to function in each domain, the ALJ considers information that will help answer the following questions "about whether your impairment(s) affect your functioning and whether your activities are typical of other children your age who do not have impairments":

(i) What activities are you able to perform?

> (ii) What activities are you not able to perform?
>
> (iii) Which of your activities are limited or restricted compared to other children your age who do not have impairments?
>
> (iv) Where do you have difficulty with your activities – at home, in childcare, at school, or in the community?
>
> (v) Do you have difficulty independently initiating, sustaining, or completing activities?
>
> (vi) What kind of help do you need to do your activities, how much help do you need, and how often do you need it?

20 C.F.R. § 416.926a(b)(2)(i)-(vi).

The evaluation of functional equivalence begins "by considering the child's functioning without considering the domains or individual impairments." Title XVI: Determining Childhood Disability Under the Functional Equivalence Rule – The "Whole Child" Approach, SSR 08-1p, 2009 WL 396031 * 1 (Feb. 17, 2009). The rules provide that "[w]hen we evaluate your functioning and decide which domains may be affected by your impairment(s), we will look first at your activities and limitations and restrictions." *Id*. citing 20 C.F.R. § 416.926a(c). The rules instruct the Commissioner to:

> Look at information we have in your case record about how your functioning is affected during all your activities when we decide whether your impairment or combination of impairments functionally equals the listings. Your activities are everything you do at home, at school, and in your community.

*Id*. citing 20 C.F.R. § 416.926a(b). The severity of limitation in each affected functional domain is then considered. This technique is called the "Whole Child" approach.

///

///

**ADMINISTRATIVE DECISION**

On September 24, 2018, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the application date, August 17, 2016. Tr. 18.

At step two, the ALJ determined Plaintiff suffered from the following severe impairment: status/post congenital heart defect repair. Tr. 18.

The ALJ found at step three that the evidence of record demonstrated Plaintiff's impairment, although severe, did not meet, medically equal, or functionally equal the criteria of any of the Listings impairments. Tr. 18. With regard to functional equivalence, the ALJ concluded Plaintiff had no limitation in acquiring and using information, no limitation in attending and completing tasks, no limitation in interacting and relating with others, less than a marked limitation in moving about and manipulating objects, no limitation in caring for himself, and less than a marked limitation in health and physical well-being. Tr. 23-28. The ALJ thus determined Plaintiff's impairment did not result in marked or extreme limitations in any of the six domains. Tr. 28.

Accordingly, the ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the August 17, 2016 disability application date, through the date of the ALJ's decision, September 24, 2018. Tr. 28-29.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred in this case by (1) failing to properly assess the Listings; (2) not properly assessing the opinion evidence; (3) not properly

///

assessing Plaintiff's testimony; and (4) failing to properly assess the domains. ECF No. 14 at 1.

## DISCUSSION

**A.  Amend Dates of Disability**

Plaintiff's opening brief requests to amend the dates of his disability to a closed period: from December 1, 2015, to August 2, 2017. ECF No. 14 at 1; *see also* ECF No. 16 at 1. It is apparent Plaintiff seeks to amend the disability dates to limit the significance of evidence pertaining to Plaintiff's improved health after August 2017. *See* ECF No. 14 at 11 (release to exercise without restriction occurred in January 2018, after the newly requested closed period of disability); ECF No. 14 at 15, 16 (admitting Plaintiff had recovered and improved by August 2017); ECF No. 14 at 17 (Plaintiff's tennis activity took place after the newly requested closed period of disability); ECF No. 14 at 20 (positive results of stress test occurred in June 2017, just before he now alleges disability ended in August 2017).

Plaintiff fails to cite authority, and the Court is aware of none, which permits a claimant to amend an application for disability benefits before a court reviewing an agency's final decision. Instead, this Court reviews the decision of an ALJ to determine whether a claimant was entitled to benefits during a specific period of time, which period extends from the alleged onset date to the date of the ALJ's decision. Otherwise, this Court would be ruling on a situation the ALJ did not have an opportunity to consider. The Court's role is not to make its own decision on the merits of a claimant's claims but to review the decision of an ALJ and determine whether the ALJ's decision was supported by substantial evidence. This Court will not restrict its review of the evidence that was considered by the ALJ in her assessment of this case. Accordingly, Plaintiff's request to amend the dates of disability to a closed period is denied.

///

### B.    Plaintiff's Subjective Complaints

Plaintiff argues the ALJ reversibly erred by not properly assessing R.V.E.'s testimony.  ECF No. 14 at 15-18; ECF No. 16 at 8-9.

It is the province of the ALJ to make credibility determinations.  *Andrews*, 53 F.3d at 1039.  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).  "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical and other evidence of record.  Tr. 20.

The ALJ found Plaintiff's allegations of continued shortness of breath, fatigue and debilitating headaches were not consistent with the objective medical evidence of record.  Tr. 19-22.

An ALJ may discount a claimant's allegations if they conflict with the medical evidence of record.  *Carmickle v. Comm'r Soc. Sec. Admin*., 553 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (an ALJ may consider whether alleged symptoms are consistent with the medical evidence).

The ALJ mentions that August and September 2015 medical appointments did not reveal cardiac symptoms. Tr. 20, 244, 249-250.  The Court believes the

ALJ detailed these reports as background information to show Plaintiff's cardiac issues did not present until late-April 2016, Tr. 251, and successful heart surgery was performed shortly after the discovery.

The ALJ determined the record reflected Plaintiff recovered well from his heart surgery as he reported in September 2016 that he was doing well with no complaints of chest pain or dizziness. Tr. 20, 305-306. Plaintiff likewise reported no complaints of shortness of breath, dizziness or headaches in a September 28, 2016 care encounter. Tr. 20, 330-331. A follow up echocardiogram in October 2016 revealed normal ventricular function and size, excellent left ventricular function, no pericardial effusion, and normal right coronary artery. Tr. 20-21, 420. Plaintiff again denied experiencing chest pain and did not complain of dizziness or headaches in a December 2016 care encounter. Tr. 21, 413-414. A February 2017 electrocardiogram resulted in "stable" findings. Tr. 21, 421. In May 2017, Plaintiff denied chest pain, presyncope or syncopal events, and the results of an electrocardiogram were normal. Tr. 21, 424. A June 2017 exercise stress test was normal and placed Plaintiff in greater than the 90th percentile for males his age. Tr. 21, 453. A November 2017 echocardiogram was again normal. Tr. 21, 427. In January 2018, Plaintiff was advised "his heart is fine," and he was released to restart exercise and participate in P.E. Tr. 21, 442. The medical evidence consistently attributed Plaintiff's periodic complaints of shortness of breath during the relevant time period to his deconditioning rather than an underlying medical condition, Tr. 44, 421, 427, 533, which eventually resolved as Plaintiff reported in April 2018 that he was an active tennis player and could practice up to 2-3 hours at a time with no significant exercise intolerance, Tr. 21, 594.

Based on the foregoing, the ALJ's finding that the medical evidence of record conflicted with Plaintiff's testimony of disabling symptoms is supported by substantial evidence.

///

The ALJ additionally determined Plaintiff's reports of difficulties in school due to his symptoms were inconsistent with his educational records. Tr. 22. Inconsistencies in a disability claimant's testimony support a decision by the ALJ that a claimant lacks credibility with respect to his claim of disabling symptoms. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986). The ALJ indicated educational records did not describe Plaintiff's absences as due to fatigue, nor was Plaintiff noted to be falling asleep during class. Tr. 237-241. Instead, Plaintiff's educational records show he had been disciplined for infractions such as passing notes, refusing to move, walking off school grounds, entering the women's restroom, and refusing to hand over his phone during class. Tr. 237-240. As found by the ALJ, these disciplinary records suggest Plaintiff's academic difficulties were not caused solely by symptoms from cardiac abnormalities. Tr. 22.

Plaintiff also asserts the ALJ discounted his subjective complaints based on his tennis activity. ECF No. 14 at 17; *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (it is well-established that the nature of daily activities may be considered when evaluating credibility). Plaintiff argues that because he alleges his disability ended in August 2017, his tennis activity in 2018 is of little import. ECF No. 14 at 17. The undersigned disagrees. At the time of the ALJ's decision, Plaintiff alleged disability through mid-2018 and had testified at the June 2018 administrative hearing that he was "tired all the time" and continued to have disabling headaches. Tr. 54. Plaintiff's April 2018 report that he was an active tennis player, could practice for up to 2-3 hours at a time with no significant exercise intolerance, and could keep up with his friends contradicts his testimony of continuing debilitating symptoms.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in

1 determining whether the ALJ's decision is supported by substantial evidence and
2 may not substitute its own judgment for that of the ALJ even if it might justifiably
3 have reached a different result upon *de novo* review.  42 U.S.C. § 405(g).  After
4 reviewing the record, the Court finds the ALJ provided clear and convincing
5 reasons, supported by substantial evidence, for finding Plaintiff's symptom
6 allegations were not entirely credible in this case.

**C.    Lay Testimony of Plaintiff's Mother, Talia D.**

Plaintiff contends the ALJ erred by rejecting the testimony of Plaintiff's mother, Talia D.  ECF No. 14 at 11-15; ECF No. 16 at 7-8.

In childhood disability cases, where the child is unable to adequately describe his symptoms, the Commissioner accepts the testimony of the person most familiar with the child's condition, such as a parent.  *Smith ex rel. Enge v. Massanari*, 139 F.Supp.2d 1128, 1134 (9th Cir. 2001).  In the Ninth Circuit, the testimony of third parties, including parents of child claimants, is evaluated under the standard applicable to lay witnesses.  *See Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1086 (9th Cir. 2000) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.").  When an ALJ discounts a parent's testimony, she must give reasons that are "germane" to that witness. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

The ALJ assigned "little weight" to the statements of Talia D. that Plaintiff continued to suffer migraines, he was tired all the time, he still experienced chest pain, and his grades suffered due to his fatigue.  Tr. 23.

The ALJ determined Talia D's opinions were not consistent with the evidence of record which, as indicated above, revealed that Plaintiff typically exhibited no cardiac abnormalities upon stress testing and echocardiogram analysis

following his surgery. Tr. 23. Objective medical evidence provides a valid basis for discounting lay witness testimony. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with medical evidence is a germane reason for discrediting a lay witness). As discussed in Section B, above, the medical record reflects Plaintiff recovered well from his heart surgery with subsequent normal and stable findings on exam.[1] *Supra.*

Furthermore, the ALJ found Talia D's opinion that Plaintiff's academic difficulties were the result of the symptoms of his impairments was undermined by Plaintiff's educational disciplinary records which suggested his poor academic performance was unrelated to cardiovascular issues. Tr. 23. As discussed in Section B, above, Plaintiff's educational records document issues other than cardiac abnormalities for Plaintiff's academic struggles during his ninth-grade year. *Supra*.

Based on the foregoing, the Court finds the ALJ provided germane reasons, supported by substantial evidence, for according "little weight" to Talia D's opinions in this case.

**D.    Paul A. Tompkins, M.D. - - New Evidence**

Plaintiff argues the ALJ also erred by providing no reason for failing to consider the July 2018 opinions of treating physician Paul A. Tompkins, M.D. ECF No. 14 at 8-9; ECF No. 16 at 3-5.

The administrative hearing in this case was held on June 20, 2018, and the ALJ issued her decision on September 24, 2018. The report of Dr. Tompkins was generated on July 11, 2018, Tr. 35-37, and submitted to the ALJ on July 28, 2018,

---

[1] Of significance, Plaintiff's June 2017 exercise stress test was normal and placed him in greater than the 90th percentile for males his age. Tr. 21, 453.

ECF No. 14-1.  Consequently, it was rendered and submitted after the hearing date but prior to the ALJ's decision.

Pursuant to 20 C.F.R. § 416.1435, counsel must submit all written material no later than five business days before the date of the scheduled hearing.  *See* Tr. 15.  If counsel fails to timely submit evidence, and no exception to the regulation applies, *see* 20 C.F.R. § 416.1435(b), the ALJ may decline to consider any newly submitted evidence.  20 C.F.R. § 416.1435(a).  Because counsel failed to timely submit Dr. Tompkins' July 11, 2018 report and no explanation for the untimely submission has been provided, the ALJ was not required to consider the report.

Nevertheless, this "new evidence" was considered by the Appeals Council and made a part of the administrative record at Tr. 35-37.  *See Ramirez v. Shalala*, 8 F.3d 1449, 1451-1452 (9th Cir. 1993) (noting that where the Appeals Council declined to review the decision of the ALJ after examining the entire record, including new material, the Ninth Circuit considered both the ALJ's decision and the additional materials submitted to the Appeals Council).  The evidence is part of the administrative record, Tr. 35-37, and shall be considered by this Court in determining whether the ALJ's decision is supported by substantial evidence.

On a "Domain Statement for Child" form provided by Plaintiff's counsel, Dr. Tompkins checked boxes indicating Plaintiff had "marked" limitations in "Moving About and Manipulating Objects" and "Health and Physical Well-Being."  Tr. 36-37.

In this case, the ALJ supported her decision regarding the assessment of the domains by according "great weight" to the opinions of medical expert Jerry W. Seligman, M.D., and the state agency medical consultants, Charles Wolfe, M.D., and Nevine Makari, M.D.  Tr. 22-23.  Each of these doctors opined that Plaintiff experienced a less than marked limitation in health and physical well-being and in moving about and manipulating objects.  Tr. 43, 62, 72.  These doctors' opinions were supported with reference to the medical evidence and, as determined by the

1  ALJ, were "consistent with the objective medical evidence, revealing a claimant
2  who, despite allegedly persistent headaches, shortness of breath, and fatigue,
3  typically exhibited no cardiac abnormalities upon stress testing and
4  echocardiogram analysis." Tr. 22-23.  As detailed in Section B, above, the medical
5  record reflects Plaintiff recovered well from his July 2016 heart surgery with
6  normal and stable findings upon exam.  *Supra.*

7  Dr. Tompkins' check-box report, Tr. 35-37, does not describe Plaintiff's
8  functional capabilities and fails to cite treatment notes or other objective evidence
9  to support his opinions, other than a comment that Plaintiff "gets out of breath with
10  activity."  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ
11  may discredit a treating physician's opinion that is conclusory, brief, and
12  unsupported by the record as a whole); *Crane v. Shalala*, 76 F.3d 251, 253 (9th
13  Cir.1996) (holding that an ALJ may reject check-off forms that do not contain an
14  explanation of the bases for their conclusions).  As previously discussed, and stated
15  by the ALJ, the medical evidence consistently attributed Plaintiff's periodic
16  complaints of shortness of breath to deconditioning rather than a medical
17  condition, Tr. 44, 421, 427, 533.  Furthermore, without more, the remark that
18  Plaintiff "gets out of breath with activity" does not appear to describe a serious
19  interference with Plaintiff's ability to independently initiate, sustain or complete
20  activities.  *See* Tr. 35 (definition of marked impairment); 20 C.F.R. §
21  416.926a(e)(2).

22  The Court finds Dr. Tompkins' July 2018 check-box report does not deprive
23  the ALJ's decision of substantial evidence support.

24  **E.    Veronica Rut Elin Schmer, M.D.**
25  Plaintiff next asserts the ALJ erred by assigning "great weight" to the
26  opinions of Dr. Schmer, Tr. 23, but failing to recognize the restrictions Dr. Schmer
27  assessed in her medical reports. ECF No. 14 at 10-11; ECF No. 16 at 5-6.
28  ///

The ALJ accorded "great weight" to the opinions expressed by Dr. Schmer, finding her opinions were consistent with the limitations assessed by other medical professionals of record. Tr. 23.

Dr. Schmer wrote a letter in September 2016 which stated Plaintiff "may require extra time walking from bus stop to school (up to 15 minutes), school to bus stop (up to 15 extra minutes), or between classes (up to 10 extra minutes)," Tr. 412, and restricted Plaintiff from participating in P.E. during his ninth-grade year, Tr. 329. Dr. Schmer explained she was keeping Plaintiff out of P.E. "because his academic load is significant, and he would have to drop classes if he goes back into P.E." Tr. 306. Dr. Schmer released Plaintiff to performing light weightlifting at home (limit of eight to 10 pounds) so he could get back into the toning of his muscles. Tr. 306.

Based on the medical evidence of record, including Dr. Schmer's reports, the ALJ concluded Plaintiff's severe impairment (status/post congenital heart defect repair) caused limitations; however, the ALJ found the impairment did not seriously interfere with Plaintiff's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(2). The ALJ thus determined Plaintiff had "less than marked limitations" in moving about and manipulating objects and in health and physical well-being. Tr. 26-28. The medical records of Dr. Schmer do not specifically assess the level of Plaintiff's functioning, nor do they otherwise indicate Plaintiff had marked limitations.

While the Court "must do more than merely rubberstamp the ALJ's decision[,]" *Winans v. Bowen*, 853 F.2d 643, 645 (9th Cir. 1988), where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld, *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citations omitted). If there is sufficient evidence to support the ALJ's outcome, the Court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990). Although Plaintiff contends the ALJ should have interpreted Dr.

Schmer's opinions differently, the Court finds the ALJ rationally interpreted Dr. Schmer's opinions and made functional equivalence findings consistent with her opinions. The ALJ's assessment and findings do not explicitly conflict with the records of Dr. Schmer. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("[I]f evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld.").

**F.     Listing 104.06A(3)**

Plaintiff contends the ALJ erred by failing to find his cardiovascular impairment satisfied the requirements of Listing 104.06A(3). ECF No. 14 at 4-7; ECF No. 16 at 1-3.

The Listings describe, for each of the major body systems, impairments that are severe enough to prevent an individual from doing any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 416.925(a). Each Listing specifies the objective medical and other findings needed to satisfy the criteria of that Listing. A diagnosis alone is insufficient; a medically-determinable impairment must also satisfy all of the criteria of the Listing, 20 C.F.R. § 416.925(d), and Plaintiff bears the burden of establishing that an impairment satisfies the requirements of a Listings impairment, *Tackett*, 180 F.3d at 1098-1099; 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

Listing 104.06A designates when a claimant with congenital heart disease has a condition that is *per se* disabling. 20 C.F.R. Part 404, Subpt. P, App. 1, § 104.06A. Listing 104.06A(3) is satisfied when cyanotic heart disease with persistent, chronic hypoxemia is manifested by "[h]ypercyanotic spells, syncope, characteristic squatting, or other incapacitating symptoms directly related to documented cyanotic heart disease." 20 C.F.R. Part 404, Subpt. P, App. 1, § 104.06A(3).

It is undisputed Plaintiff had three syncopal events between December 2015 and May 2016, a serious heart issue was discovered, and Plaintiff underwent

corrective heart surgery in July 2016. However, as discussed above, Plaintiff recovered well from his heart surgery with later examinations revealing normal and stable findings. *Supra.* The record reflects no subsequent findings of "incapacitating" symptoms and, at the administrative hearing, Dr. Seligman testified Plaintiff's symptoms did not meet or equal a Listing, specifically identifying Listing 104.06. Tr. 18, 43, 44-45. Notably, as indicated by Defendant, Plaintiff attended school in the year prior to his heart surgery, underwent heart surgery in the summer, and returned to school the following fall. ECF No. 15 at 5 citing Tr. 52. The Court finds substantial evidence supports the ALJ's determination that Plaintiff's severe cardiovascular impairment did not meet or equal a Listings impairment.

## G. Functional Equivalence

Plaintiff additionally argues the ALJ erred by failing to properly assess the functional domains in this case. ECF No. 14 at 18-20; ECF No. 16 at 9-10. Plaintiff contends he had marked limitations in two domains: "moving about and manipulating objects" and "health and physical well-being;" therefore, his severe impairment functionally equaled the Listings. *Id*.

To functionally equal the Listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). A "marked limitation" in a domain results when the child's impairment "interferes seriously" with the ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(2). An "extreme limitation" in a domain results when the child's impairment interferes "very seriously" with his ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(3).

The ALJ weighed the medical record, Plaintiff's educational records, and the opinion evidence and found Plaintiff had less than marked limitations in the functional domains of moving about and manipulating objects and health and

physical well-being. Tr. 26-28. As discussed above, the ALJ credited the opinions of medical expert Seligman and reviewing doctors Wolfe and Makari that Plaintiff had a less than marked limitation in health and physical well-being and in moving about and manipulating objects. Tr. 43, 62, 72. Moreover, the evidence of record shows Plaintiff recovered well from his July 2016 heart surgery and had normal and stable findings on subsequent exams. *Supra.* The ALJ's findings pertaining to the domains are supported by substantial evidence.

Since Plaintiff did not have marked limitations in at least two domains or an extreme limitation in one domain, the ALJ did not err by finding Plaintiff did not functionally equal the Listings. *See* 20 C.F.R. § 416.926a(d).

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED**:

1. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED October 29, 2020.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE